UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA,

                Plaintiff,

    vs.                      Case No.  14-CR-055-WMC

RAUL VIVAS-CEJA,            Madison, Wisconsin
                          March 30, 2015
           Defendant.    2:00 p.m.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF SENTENCING HEARING
HELD BEFORE CHIEF JUDGE WILLIAM M. CONLEY

APPEARANCES:

For the Plaintiff:
        Office of the United States Attorney
        BY:  PETER M. JAROSZ
        Assistant United States Attorney
        222 West Washington Avenue, Suite 700
        Madison, Wisconsin  53703

For the Defendant:
        Federal Defender Services of Wisconsin, Inc.
        BY:  JOSEPH A. BUGNI
        Madison Branch Office
        22 East Mifflin Street, Suite 1000
        Madison, Wisconsin  53703

Also Present:
        Raul Vivas-Ceja, Defendant
        Lori Baker, U.S. Probation Officer

CHERYL A. SEEMAN, RMR, CRR
Official Court Reporter
United States District Court
120 North Henry Street, Room 520
Madison, Wisconsin  53703
1-608-255-3821

1    (Called to order.)

2        THE CLERK:  Case No. 14-CR-55-WMC, *United States*

3    *of America v Raul Vivas-Ceja*, is called for sentencing.

4    May I have the appearances, please?

5        MR. JAROSZ:  Yes.  Peter Jarosz for the United

6    States.  Good afternoon, Your Honor.

7        MR. BUGNI:  Good afternoon, Your Honor.  Joe

8    Bugni appearing on behalf of Raul Vivas-Ceja.

9        THE COURT:  We are here for the sentencing of

10   Raul Vivas-Ceja.  And I note that defendant is being

11   assisted by a translator and so we will begin with the

12   swearing in of the interpreter.

13              **INTERPRETER, SWORN**

14       THE INTERPRETER:  Good afternoon, Your Honor.

15       THE COURT:  Good afternoon.  I'm sorry, I didn't

16   get your name when it came out.

17       THE INTERPRETER:  Yes, Your Honor.  This is

18   Laura Garcia-Hein, the staff interpreter for the United

19   States District Court in Nebraska.

20       THE COURT:  Thank you, very much.  And,

21   Mr. Vivas-Ceja, I take it that you are able to hear and

22   the translation is effective for you; is that correct?

23       THE DEFENDANT:  Yes.

24       THE COURT:  Have you had sufficient time to read

25   and discuss the presentence report, the revised reports

1    and the addendum to those reports with your counsel?

2         THE DEFENDANT:  Yes.

3         THE COURT:  And I understand that assuming it's

4    applicable, the government is moving for an additional

5    one-level reduction for acceptance of responsibility?

6         MR. JAROSZ:  Yes, Your Honor.

7         THE COURT:  That will be granted.  And with

8    those preliminaries, I will accept the plea agreement

9    finding that the offense of conviction adequately

10   reflects the defendant's criminal conduct and the

11   agreement does not undermine the statutory purposes of

12   sentencing.

13        In determining a reasonable sentence I will take

14   into consideration both the advisory sentencing

15   guidelines and the statutory purposes of sentencing that

16   are set forth in Section 3553(a) of Title 18.

17        As for the guidelines, the defendant requested

18   clarifications to factual assertions in the presentence

19   report as well as raised two objections to the guidelines

20   application here.  The revised report addresses those

21   clarifications and removes certain information from the

22   report, none of which affected the guideline

23   calculations.

24        The defendant also objects that Title 18, Section 16

25   of the U.S. Code is void for vagueness, although never

1   really develops that objection other than claiming that

2   it is not yet ripe, as the defendant asserts that he only

3   intends to pursue the issue if the Supreme Court issues a

4   favorable ruling in *Johnson v. United States*, which is

5   likely to address the adequacy of the definition of a

6   "violent felony" in subsection (2)(B) of Section 16.  I

7   view that argument preserved and so I'm not going to

8   comment further on it.

9        As for the defendant's remaining objection, he

10  argues that his prior felony conviction for fleeing and

11  eluding an officer, in violation of Section 346.0(3) of

12  the Wisconsin Statutes, neither qualifies as an

13  aggravated felony nor warrants the eight-level increase

14  in the offense level under Section 2L1.2(b)(1)(C).

15       To be found guilty of that section a person must in

16  every instance have: (1) continued to operate a motor

17  vehicle after receiving a visual and audible signal from

18  a parked -- I'm sorry, from a marked police vehicle; and

19  (2) knowingly attempted to flee and elude the police.

20  The deliberate and conscious decision to flee from a

21  police officer by motor vehicle demonstrates a

22  defendant's lack of concern for the safety of other

23  people and property.  Further, when police confront

24  someone attempting to flee and elude, they are faced with

25  a substantial risk that the situation will escalate as a

1   result of the perpetrator's intentional use of physical

2   force against them in a continued attempt to elude

3   capture.

4       Accordingly, a violation of Section 346.04(3) of the

5   Wisconsin Statutes qualifies as a crime of violence under

6   the rationale of the Seventh Circuit's opinion in *United*

7   *States v. Dismuke*, 593 F.3d 582, a 2010 decision.

8   Indeed, as the Supreme Court explained in *United States*

9   *v. Sykes* in 2011, vehicle flight from a law enforcement

10  officer ordinarily results in a dangerous confrontation

11  between the offender and the law enforcement officer and

12  others, as well as creating a substantial risk that the

13  perpetrator will intentionally use physical force to

14  continue his attempt to elude capture.

15      For this reason the defendant's past conviction

16  qualifies as a crime of violence under Section 16(b) of

17  Title 18 of the United States Code, as well as an

18  aggravated felony, warranting an eight-point increase in

19  the offense level.

20      And the probation office has therefore calculated

21  the advisory guidelines correctly using the current

22  manual.  I note that use of the November 1, 2012 manual

23  in effect during the commission of the offense produces

24  the same advisory guideline range.

25      The guideline for illegal reentry, in violation of

1   Section 1326 of Title 8, is found at 2L1.2 of the

2   guidelines.   Subsection (a) provides that the base

3   offense level is eight.   Because the defendant was

4   previously deported, or unlawfully remained in the United

5   States after a conviction for an aggravated felony, and

6   received a 12-month sentence following a felony

7   conviction for vehicle operator fleeing or eluding an

8   officer in Dane County, Wisconsin, eight levels are added

9   pursuant to Section 2L1.2(b)(1)(C).   No other Chapter Two

10  adjustments apply.   I should have said received a "year

11  and a day" sentence.   I believe that's correct, although

12  maybe I should confirm that before I go on.

13          MR. BUGNI:   Your Honor --

14          THE COURT:   Yes.   Was it a 12-month sentence?

15          MR. BUGNI:   -- it was a 12-month sentence

16  followed by six months on a separate charge that would

17  allow for that.

18          THE COURT:   Thank you.   This leaves the

19  eight-level addition.   And I find no other Chapter Two

20  adjustments apply, just as did the probation office.

21      The defendant qualifies for a three-level downward

22  adjustment under Section 3E1.2 because he has

23  demonstrated acceptance of responsibility for his offense

24  by pleading guilty and the government has moved for an

25  additional reduction.

1        This is a long wind-up to concluding with respect to

2   the sentencing guidelines that with a total offense level

3   of 13 and a criminal history category of III, the

4   defendant has an advisory guideline imprisonment range of

5   18 to 24 months.  And it is there I begin to consider an

6   appropriate sentence under Section 3553(a).

7        I'm happy to hear from both counsel, and of course

8   from the defendant, although I have read the numerous

9   written submissions by the parties, including the

10  sentencing -- recent sentencing memorandum filed on

11  behalf of the defendant and the letters written by both

12  the defendant as well as family members on his behalf.

13  And I will begin with the government.

14           MR. JAROSZ:  Nothing further, Your Honor.  Thank

15  you.

16           THE COURT:  Anything more for the defense?

17           MR. BUGNI:  No, Your Honor.  I would only add

18  that regardless of the guidelines, I really believe a

19  "year and a day" sentence is appropriate here.  I've gone

20  over it almost *ad nauseam* in the sentencing memo.  But I

21  will say that here you have a young man, this is the

22  first time on this charge.  This is really meant as a

23  wake-up call.  And a sentence of a year and a day

24  accomplishes everything that this court would hope for in

25  that respect.

1          THE COURT:  All right.  Is there anything more,

2     Mr. Vivas-Ceja, that you would like to say to the Court

3     before I render sentence?

4          THE DEFENDANT:  All I want to say -- all I want

5     to do is apologize for having come back and for having

6     created problems here in the United States.  That is all.

7          THE COURT:  And you had indicated that you had

8     wanted to do that in your written letter to the Court as

9     well.  An apology to the Court is fine, but the problem

10    that I have in trying to discern an appropriate sentence

11    is that you didn't just come back into the country

12    illegally on a number of occasions, but when caught this

13    time you repeatedly refused to take responsibility for

14    it.  And I don't say that by denying you the guideline

15    reduction, because you have since come forward and pled

16    guilty.  But you refused to report after being bonded

17    when you were caught at the airport, you refused repeated

18    opportunities to come in and self-report, and then you

19    fled; all of this done while hiding your identity in a

20    number of ways.

21        And for me the difficulty in the position that your

22    counsel is taking is that this doesn't suggest someone

23    who isn't going to do exactly the same thing when given

24    the opportunity.  It suggests someone who, for whatever

25    reason -- and obviously your children is a strong pull --

1  for whatever reason you have not been willing to step up

2  until now.  And you understand I have to weigh that in

3  trying to arrive at an appropriate sentence?

4           THE DEFENDANT:  Yes.

5           THE COURT:  All right.  In arriving at a

6  sentence I have considered the defendant's history.  The

7  defendant was born in Mexico.  He moved to the United

8  States with his extended family when he was just 12 years

9  of age.  The defendant enrolled in school in this country

10 but dropped out within a few years.  And he did so to

11 work, never returning to school.

12      The defendant has three minor children, all of whom

13 are U.S. citizens.  He also owns a home in Beloit,

14 Wisconsin.  However, the defendant failed to comply with

15 the requirements and directives of the U.S. Department of

16 Homeland Security and abandoned any right he may have had

17 to obtain permanent legal status in 2007, due in part, he

18 claims, to his attorney's malpractice.

19      The defendant appears to have earned a significant

20 income doing skilled work in this country, but did not

21 report this income or pay income taxes on his earnings,

22 no doubt because of the risk of detection.  In fact the

23 defendant concealed his assets by registering multiple

24 vehicles under false names at a variety of addresses.

25      While the defendant's continued criminal conduct

1   during the two months he was aware of the pending federal

2   indictment and warrant did not rise to the level of

3   obstruction of justice, it speaks to the defendant's

4   ability and willingness to avoid detection by law

5   enforcement by utilizing aliases and fraudulent

6   documentation.

7       Moreover, his criminal history suggests that the

8   defendant has struggled with alcohol use, but did not

9   wish to discuss alcohol's role in his criminal history

10  with the probation office, neither did he express an

11  interest in participating in substance abuse treatment.

12      The defendant has also been deported on at least

13  three occasions since 2009 and returned each time

14  illegally within a month of deportation.

15      The defendant has made a habit of concealing his

16  identity, which demonstrates a lack of insight into the

17  seriousness of his offense or at least substantially

18  greater incentives to reoffend.  Further, the defendant

19  has no plans to establish a life in Mexico, at least not

20  articulated, and has not voiced any future goals in that

21  regard.

22      The defendant's most recent arrest occurred after he

23  attempted to pass through security using a fake and

24  expired Mexican Voter ID at the Dane County Regional

25  Airport, reportedly to travel to California for his

1    grandmother's funeral.

2       After posting a bond the defendant absconded,

3    managing to avoid arrest for almost a year.  Previously

4    he had been deported following multiple state court

5    convictions for operating a motor vehicle while

6    intoxicated in 2010 and fleeing and eluding -- I should

7    say following state court convictions for operating a

8    motor vehicle while intoxicated in 2010 and for fleeing

9    and eluding an officer in 2011.

10      Defense counsel noted three reasons for a downward

11   adjustment here: (1) until now, the defendant has only

12   one felony conviction and served one year in jail with

13   Huber law privileges; (2) he appears to have been a

14   diligent worker in this country; and (3) he has learned

15   his lesson.  Unfortunately, these factors are more than

16   offset by the defendant's inability to confront his

17   alcoholism, which has fueled both dangerous use of

18   vehicles and possible domestic violence, as well as

19   repeated illegal, surreptitious reentry back into this

20   country.

21      Taking into consideration the nature of the offense,

22   as well as the defendant's personal history and

23   characteristics, I am persuaded that a guideline sentence

24   is reasonable and no greater than necessary to hold the

25   defendant accountable, protect the community, provide the

1  defendant the opportunity for rehabilitative programs and

2  achieve parity with the sentences of similarly-situated

3  offenders.

4      As to the one-count indictment -- I'm sorry.  As to

5  Count 1 of the indictment, it is adjudged that the

6  defendant is committed to the custody of the Bureau of

7  Prisons for a term of 21 months.

8      Consistent with the provisions of Section 5D1.1,

9  Application Note 5, no term of supervised release is

10 imposed because the defendant is a previously-deported

11 alien and almost certainly subject to deportation again.

12     It is adjudged that the defendant is to pay a $100

13 criminal assessment penalty to the Clerk of Court for the

14 Western District of Wisconsin immediately following

15 sentencing.

16     The defendant does not have the means to pay a fine

17 under Section 5E1.2(c), however, without impairing his

18 ability to support himself and his family upon release

19 from custody and so no fine will be imposed.

20     The probation officer is directed to send the U.S.

21 Immigration and Customs Enforcement a copy of this

22 judgment and to provide the Court with a copy of the

23 transmittal letter.

24     Finally, the U.S. Probation Office is to notify

25 local law enforcement agencies and the State Attorney

1  General of the defendant's release back into the

2  community.

3       I believe, Mr. Jarosz, the government has a motion

4  to dismiss the remaining count?

5            MR. JAROSZ:  That's correct, Your Honor.  We

6  would move to dismiss Count 2 at this time.

7            THE COURT:  That is granted.  Mr. Vivas-Ceja,

8  you have a right to appeal this court's sentence.  And

9  you have very able counsel who did an effective job of

10  arguing for a lower sentence.  It just was not one that I

11  could see justified on the overall record.  That time to

12  appeal is very short, it's ten days, and you should

13  discuss the grounds for a possible appeal with your

14  counsel.

15       I'm more concerned on or more concerned with your

16  getting a message, which will only become more loudly

17  delivered should you continue to reenter this country.  I

18  don't mean to minimize the incentives, including most of

19  all your children who are likely to remain here as a

20  reason for you to come back.

21       But at this point your conduct is such that you're

22  unlikely to ever be able to reenter, and certainly not to

23  reenter this country legally under current law.  If you

24  do and are caught, you're facing even harsher penalties

25  than I've imposed today.  And that's a reality under the

1   law, whether it is the best result or not and whether it

2   is consistent with your own view of what the immigration

3   laws should be.

4       And I hope you're able to find some way to remain in

5   contact with your children while complying with our

6   immigration laws.  In any event, if you don't, you will

7   continue, as your counsel noted, to live in prison in

8   this country.

9       With that said, I don't have anything further.

10  Anything more for the government?

11       MR. JAROSZ:  Your Honor, just for the purposes

12  of the appellate record here, is it the Court's -- would

13  the Court have imposed the same sentence regardless of

14  the finding it made on the fleeing and eluding an officer

15  under 346.04(3)?

16       THE COURT:  I cannot say that and I'm not going

17  to say that.

18       MR. JAROSZ:  That's fine.

19       THE COURT:  I think, you know, I consider all

20  factors and I consider that among them.  I do think that

21  that is the state of the law and so I began with that.  I

22  also considered the 3553(a) factors.  And whether I would

23  have come out the same way under those, I don't know.

24  But I gave a guideline sentence intentionally, weighing

25  all factors, including the fact that it was the advisory

1   guideline.  So I don't know if that's the record you

2   wanted to make, but it is nevertheless the record that

3   you've made.

4           MR. JAROSZ:  Thank you, Your Honor.

5           THE COURT:  Anything more for the government?

6           MR. JAROSZ:  No, Your Honor.  Thank you.

7           THE COURT:  All right.  Anything more for the

8   defense?

9           MR. BUGNI:  Nothing more for the defense, Your

10  Honor.

11          THE COURT:  All right.  Then we are adjourned.

12      (Adjourned at 1:32 p.m.)

13                          * * *

14          I, CHERYL A. SEEMAN, Certified Realtime and
    Merit Reporter, in and for the State of Wisconsin,
15  certify that the foregoing is a true and accurate record
    of the proceedings held on the 30th day of March, 2015,
16  before the Honorable William M. Conley, Chief Judge of
    the Western District of Wisconsin, in my presence and
17  reduced to writing in accordance with my stenographic
    notes made at said time and place.
18  Dated this 20th day of April, 2015.

19

20                          /s/

21                      Cheryl A. Seeman, RMR, CRR
                        Federal Court Reporter
22

23

24  The foregoing certification of this transcript does not
    apply to any reproduction of the same by any means unless
25  under the direct control and/or direction of the
    certifying reporter.